## TOWAR vs. HALE.

46   361
134a 438
46   361
141a 364
46   361
1ap 25
2ap576

46b   361
70 AD ¹100

The parties named in a deed of conveyance as grantees were described in the introductory part of the deed as follows: "L. R., J. R. and M. M., *trustees of the Methodist society, and to their successors, of the town of L.* &c. of the second part." The grant was to the parties of the second part, *and to their heirs and assigns forever.* The *habendum* clause was in the following words: "To have and to hold the said premises above described, to the said parties of the second part, *their heirs and assigns,* to the sole and only proper use, benefit and behoof of the said parties of the second part, *their heirs and assigns forever.*" And the covenants of seisin and for quiet enjoyment were by the grantors to and with the said parties of the second part, *their heirs and assigns.*

*Held* that the deed conveyed the absolute title to the three individuals named therein as grantees. And that the addition to their names, in the statement of the parties, of "trustees of the Methodist society, and their successors," in the absence of proof of the existence of a legally organized religious society of that name or answering to it, should be rejected for all purposes, except as a *descriptio personarum* of the grantees.

*Held, also,* that the whole scope and language of the deed excluded the idea of a deed in trust for a religious corporation.

*Held, further,* that assuming that the grant was made for the use and benefit of a corporation, even if such corporation had been judicially dissolved, and its franchises forfeited, the title to the property would not revert to the grantor or his heirs; the language of the statute, (1 *N. Y. Statutes at Large, pp.* 557, 558, § 9,) respecting the dissolution of corporations, precluding the idea of the land reverting, in such a case; at least not until all the debts owing by the corporation are paid.

And that, assuming that facts existed which would, in a direct proceeding against the corporation by *scire facias* or other action, be sufficient to justify a judgment of dissolution and ouster, the heir at law of the grantor could not avail himself of such facts collaterally; the corporation never having been judicially dissolved, but being still in existence, retaining its corporate functions and franchises.

It is a general principle that a cause of forfeiture can not be taken advantage of, or enforced, against a corporation collaterally, or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer.

MOTION by the plaintiff to set aside a nonsuit and for a new trial, in an action to recover the possession of real estate. The action was brought upon the basis of the idea that the land was conveyed by Henry Towar, the plaintiff's ancestor, to a religious corporation, for the purpose of being

used as the site of a church edifice; that it had been at one time used for that purpose, but had ceased to be so used; that the corporation was broken up and had ceased to exist; and that the title to the lot had reverted to the heirs of the original grantors.

*J. Welling,* for the plaintiff.

*Wm. Clark,* for the defendant.

*By the Court,* WELLES, J.   We are met at the threshold of this examination by the question of the effect of the deed from Henry Towar and wife to Lawrence Riley and others, bearing date April 21, 1830, conveying the piece of land described in the complaint.   The parties named therein as grantees are described in the introductory part of the deed as follows: "Lawrence Riley, James Roy and Michael Miller, *trustees of the Methodist society, and to their successors, of the town of* Lyons and county and state aforesaid, of the second part."   The grant is to the parties of the second part, *and to their heirs and assigns forever.*   The *habendum* clause is in the following words: "To have and to hold the said premises above described, to the said parties of the second part, *their heirs and assigns,* to the sole and only proper use, benefit and behoof of the said parties of the second part *their heirs and assigns forever.*"   The covenants of seisin and for quiet enjoyment are by the grantors to and with the said parties of the second part, *their heirs and assigns.*

The plaintiff claims one undivided fifth part of the premises as heir at law of his father, the said Henry Towar, and the whole or some part of the four other undivided fifth parts thereof by virtue of conveyances from some or all of the other heirs of said Henry Towar, who died in 1846 intestate, upon the ground that, as he alleges, the religious corporation for whose use the deed was in fact given, has

Towar *v.* Hale.

become dissolved and extinct by *non user*, or neglect to exercise its corporate franchises, and that the premises in question have thereby reverted to the grantor and his heirs.

In order to sustain this claim, the plaintiff introduced in evidence, under an objection by the defendant's counsel, a certificate showing the organization on the 12th day of November, 1827, of a religious society in the south part of the town of Lyons, at a place called the village of Alloway, such society to be called and known by the name and title of " The Union Society of Alloway," and that three trustees of the society were then and there duly elected. The plaintiff also gave parol evidence, under like objection, tending to show that the society mentioned in the certificate was intended to embrace the Methodist, the church of England and Presbyterian denominations, and that the meeting house erected on the lot in question was generally used and occupied by the Methodist denomination. That for a long time after the meeting house was erected it was used as a Methodist meeting house, entirely. That those who met there were called Methodists. That it was called the Methodist Society of Alloway, the Methodist Society, and the Union Society. That they were all one and the same thing. That there was no society of Methodists incorporated there by the name of the Methodist Society. That there were a good many Methodist societies in the county of Wayne—one or two in the village of Lyons, about three miles from the village of Alloway. That the lot and meeting house had been abandoned as a place of religious worship for ten or fifteen years before the trial, the house being in a dilapidated condition and unfit for use as such, and that no religious services or meetings by any religious denomination had been held therein during that time.

The plaintiff also gave in evidence two quit-claim deeds for the premises in question to himself, from various persons, being heirs at law of said Henry Towar, deceased. The grantors in these deeds comprised all the heirs at law of said

Henry Towar, except three minor children of a deceased son, together with the plaintiff, and the interests of these three minors were attempted to be conveyed by their father as their guardian, but without any authority appearing for him to make such conveyance.

To return to the question of the effect of the deed given by Henry Towar in his lifetime to Lawrence Riley and others of the lot in question. It seems to me that it conveyed the absolute title to the three individuals named as grantees. The addition to their names in the statement of the parties, of "trustees of the Methodist society and their successors," in the absence of proof of the existence of a legally organized religious society of that name or answering to it, should be rejected for all purposes except as a *descriptio personarum* of the grantees. There was no evidence of any such society, and hence there could be no successors as trustees to the grantees and no beneficiaries for whom they could take and hold in trust. The conveyance was to them and their heirs and assigns forever ; *the habendum* was to them their heirs and assigns forever ; and the covenants were with them their heirs and assigns. The whole scope and language of the deed which have any bearing on the question exclude the idea of a deed in trust. If this conclusion is correct, it puts an end to the plaintiff's claim. But if I am wrong, and the deed is to be construed as conveying to the grantees an estate in trust for a religious corporation which can be ascertained and identified, there are still insuperable objections to the plaintiff's recovery.

Assuming that facts exist which would, in a direct proceeding against the corporation by *scire facias* or other action, be sufficient to justify a judgment of dissolution and ouster, the plaintiff can not avail himself of such facts collaterally. The corporation has never been judicially dissolved, but it is still in existence, retaining its corporate functions and franchises. It is a general principle that a cause of forfeiture can not be taken advantage of, or enforced against a corpora-

Towar *v.* Hale.

tion collaterally, or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation so that it may have an opportunity to answer. (*Angell & Ames on Corp. p.* 664, *and authorities cited in note* 1. *Adams* v. *Beach,* 6 *Hill,* 271. *In the matter of the Reformed Presbyterian Church of the city of New York,* 7 *How. Pr. R.* 476.) Again; if the corporation or corporations for whose use and benefit the grant in question was made had been judicially dissolved and it's or their franchises forfeited, the title to the property would not revert to the grantor, or his heirs. Section 9 of title 3 of chapter 18 of part 1 of the Revised Statutes, (1 *N. Y. Stat. at Large, pp.* 557, 558,) provides as follows: "Upon the dissolution of any corporation created or to be created, and unless other persons shall be appointed by the legislature, or some court of competent authority, the directors or managers of the affairs or such corporation at the time of its dissolution, by whatever name they may be known in law, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the corporation, collect and pay the outstanding debts, and divide among the stockholders the moneys and other property that shall remain after the payment of debts and necessary expenses." The language of this section precludes the idea of the land in question reverting—certainly not until all the debts owing by the corporation are paid. It applies to all corporations created or to be created.

We think the plaintiff was properly nonsuited at the trial, and that a new trial should be denied, and judgment should be ordered for the defendant upon the nonsuit.

New trial denied.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]