ISAAC HEATH, Appellant, *v.* WALTER BARMORE, Respondent.

The rule of the common law, that real estate held by a corporation at the time of its dissolution reverts to the grantor, does not prevail in this State in respect to stock corporations. Where lands are conveyed absolutely to a corporation having stockholders, no reversion or possibility of a reverter remains in the grantor.

A corporation organized under the plank-road laws of this State is author-ized to take, by purchase, the entire fee of lands needed for its road, and no condition or qualification of the grant will be implied in an absolute conveyance to it in fee. The grantor retains no property therein which will prevent a division of the property among its stockholders or which will preclude the State, with the assent of the company, from diverting the land to other public uses, or from declaring by law that a surrender of any part of the road by the company shall operate to transfer the title of the company to the town in which the land is so located.

The provisions of the act of 1854 in relation to plank-roads, etc. (chap. 87, Laws of 1854), which authorize a plank-road company to surrender all or any portion of its road, and provide that in such case the portion surrendered shall cease to belong to the company, and shall revert and belong to the several towns, etc., make such surrender equivalent to an alienation by the company, and embrace as well lands which never before belonged to the towns as those which were public highways when acquired by the company, and the act cannot be assailed upon the ground that it takes the property of the grantor to the company for public use without just compensation.

(Submitted November 15, 1872; decided November 26, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the eighth judicial district, affirming a judgment entered upon the decision of the court upon a trial at circuit without a jury.

This was an action of trespass. In January, 1852, the Fredonia and Sinclairsville Plank-road Company was organized for the purpose of constructing a plank-road from the village of Fredonia to the north line of the town of Ellicott. The company surveyed their road and run it across lands in the possession of Rufus Pratt, and also across lands in the pos-session of the plaintiff, where previously there had been no highway. The plaintiff at the time was in possession of 100 acres of land, through which the road was to run, to fifty acres

of which he had title. The title to the residue was in the heirs of James Heath, his father. Pratt was in the possession of thirty acres north of and adjoining the land possessed by plaintiff. He held this under a contract with James Heath for the purchase thereof, and had paid about one-third of the purchase-money. The title to this land was in the heirs of James Heath.

In 1852 Pratt conveyed to the company, their successors and assigns, so much of his land as should be selected for the site of their road, being a strip four rods in width. The plaintiff also conveyed to the company a strip of his land four rods in width. These deeds were recorded in the clerk's office of Chautauqua county in June, 1863. Soon after obtaining these deeds, the company constructed their road across these lands in the possession of Pratt and the plaintiff.

In 1856 Pratt, who had paid the purchase-money, but had not taken a deed, sold his interest in the thirty acres to the plaintiff. He gave no conveyance on this occasion, merely surrendering the papers he had received from Heath. Soon after this, the heirs of James Heath conveyed to the plaintiff 128 acres of land, including the fifty acres which had previously been conveyed to him and the thirty acres which had been in the possession of Pratt.

In November, 1859, proceedings were had by the company for the abandonment of a portion of their road, including the land acquired from Pratt and the plaintiff as aforesaid. Soon after the abandonment the plaintiff proceeded to exercise acts of ownership over the land so conveyed and to obstruct the travel over it. His obstructions were removed by the town authorities.

In the spring of 1865 a bridge across a slough was removed by high water, and the timber and plank of which it was composed carried down stream. A portion of these materials were deposited on the plaintiff's land. The defendant, by direction of the town authorities, hauled the timber and plank back again across the plaintiff's fields, he forbidding their doing it. In July, 1866, plaintiff fenced up that part of

Statement of case.

the road which crosses his land at both ends. The fences were thrown down by defendant and travel resumed. The plaintiff then commenced an action in a Justice's Court for trespass. The defendant pleaded title in the town, whereupon the action before the justice was discontinued and this action commenced. The judge found the following conclusions of law : 1st. That the Fredonia and Sinclairsville Plank-road Company, through the deeds executed by Pratt and the plaintiff, acquired the right to use the lands described in those deeds for the purpose of their road during the period embraced in their charter. 2d. That on the abandonment of their road by the company in 1857 their rights in those lands, by virtue of the provisions of chap. 87 of the statute of 1854, passed to the town of Gerry, and belong to that town. 3d. That the plaintiff cannot recover for any acts done by the defendant within the strip of land four rods in width embraced in the deeds given by him and Pratt to the said company. 4th. That the defendant trespassed upon the lands of the plaintiff outside of the limits of the former plank-road, but now highway, when he entered thereon to remove the bridge materials to their former position, and adjudged that the plaintiff should recover his damages for such trespass, which he found to be three dollars. Judgment was entered accordingly.

*A. Hazeltine* for the appellant. By the abandonment of the road the town acquired no right to the land, except such as had previously been a highway. (*The Presbyterian Society of Waterloo* v. *The Aub. and Roch. R. R. Co.*, 3 Hill, 567 ; *Fletcher* v. *The Aub. and Syr. R. R. Co.*, 25 Wend., 462 ; *Bloodgood* v. *The Mohawk and H. R. R. Co.*, 18 id., 1 ; 12 id., 371 ; 24 N. Y., 658 ; *Williams N. Y. C. R. R. Co.*, 16 id., 97 ; 7 John., 477 ; 18 id., 238 ; 3 Barb., 306 ; *McManus* v. *Butler*, 49 id., 176.) On the abandonment of the *locus in quo* of the road, the land reverted to the original owners. (*Hooker* v. *U. & M. Turnpike Co.*, 12 W., 371 ; 1 R. S., 723, 1st ed. ; 3 R. S., 11, 5th ed. ; 12 Wend., 371–373 ;

3 Hill, 567; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y., 97; *Mahon* v. *N. Y. C. R. R. Co.*, 24 id., 658; *People* v. *The Coms. of Palatine*, 53 Barb., 70; *People* v. *Lawrence*, 54 id., 589.)

*C. R. Lockwood* for the respondent. Upon the abandonment of the road the land belonged to the town for a public use. (16 N. Y., 108, 109; *Benedict* v. *Goit*, 3 Barb., 465; *Walker* v. *Caywood*, 31 N. Y., 51; 14 id., 516; *Craig* v. *and Roch. City and Brighton R. R. Co.*, 39 id., 404; *People* v. *Kerr*, 37 Barb., 357; 3 Stat. at Large, 549; *Fletcher* v. *Peck*, 5 Cranch, 87; *Morris* v. *People*, 3 Den., 381; 3 Seld., 109; Laws 1854, chap. 87, p. 167.) The reversionary interest to Pratt and plaintiff lasted only while the company had the lands. (5 Den., 389; 2 Kent, 282; 5 Den., 389; 1 R. S., 599, § 1; 12 N. Y., 135.)

RAPALLO, J. In so far as the plaintiff's right to recover in this action is sought to be sustained, on the ground that at common law real estate held by a corporation at the time of its dissolution reverts to the grantor, it cannot be supported for two reasons: First, because the plank-road company has not been dissolved, and secondly, because the rule of law invoked by the plaintiff does not prevail in this State in respect to stock corporations. Under the provisions of 1 R. L., 248, and 1 R. S., 600, §§ 9 and 10, upon the dissolution of a corporation, the directors or managers at that time become trustees of its property (unless some other custodian is appointed), for the purpose of paying the debts of the corporation and dividing its property among its stockholders; and these provisions apply as well to the real as to the personal property of corporations. (*Owen, Receiver*, v. *Smith*, 31 Barb., 641; 2 Kent Com., 307 and 308; notes 371 and 372 of 11th ed.; Angell & Ames on Corporations, § 799, *a*, 5th ed.; 46 Barb., 365.) Consequently, where lands are conveyed absolutely to a corporation having stockholders, no reversion or possibility of a reverter remains in the grantor.

The conveyances to the plank-road company in this case appear to have been absolute conveyances—no condition or limitation of the estate seems to have been contained in them, and they therefore passed the whole estate of the grantor. (2 R. S., 748, § 1.)

The plaintiff contends, however, that these conveyances having been made to a plank-road company, the estate granted must be deemed to be limited to that required for the purposes of a plank-road, and the devotion of them to those purposes is an implied condition or qualification of the grant, and in support of this position he cites *Jackson* v. *Hathaway* (15 Johns., 447); *Matter of John and Cherry Streets* (19 Wend., 659 and 675); *Hooker* v. *Utica Turnpike Co.* (12 id., 371); *Mahan* v. *N. Y. Central R. R.* (24 N. Y., 658); 3 Hill 568; 25 Wend., 462; 18 id., 9.)

It did not appear in either of the cases cited that there had been any conveyance by the owner of the soil to the corporation. They are all cases of lands taken for streets or highways, or by turnpike companies who were authorized to take lands necessary for the construction and operation of their roads, at an appraised value; and they hold that, as to lands taken for highways, the public acquires only an easement, leaving the fee in the original owner, and that as to lands taken by turnpike companies, although the acts declare that they shall be held by the company, its successors and assigns forever, it acquires only such interest as is necessary for the public use for which the lands are taken; that when that use ceases, the lands revert, and that an additional burden, such as a steam railroad, cannot be imposed upon them by law, without making further compensation to the owner of the fee.

These cases decide only what was the legal effect of a taking of land *in invitum* for highways, or under the provisions of the turnpike act, but do not determine the effect of a voluntary conveyance by an individual to a corporation capable of taking land by purchase. Even a turnpike company may

by grant acquire lands in fee and convey an indefeasible title to a purchaser. (*People* v. *Mauran,* 5 Denio, 389.)

The plank-road act (Laws of 1847, chap. 210, § 28) provides expressly, as to land taken by legal proceedings, that it shall be held so long as it shall be used for the purposes of the road. But no such provision is made with respect to lands acquired by purchase. The amended act (Laws of 1847, chap. 398, § 1) declares, that any company formed under the previous act may procure, by purchase or gift from the owners thereof, any land necessary for the construction of the road, and is silent as to the tenure. So far from gathering from this any intention to extend the limitation of the tenure to lands thus purchased, it would rather indicate the intention to leave that matter to the agreement of the parties, when the lands are acquired by private purchase. When a plank-road is sold under execution, it is provided by the act of 1857 (chap. 482) that a new corporation may be formed by the purchaser and others, for a term not exceeding the unexpired term of the original incorporation. This, however, is only a limit upon the duration of the franchise. It would not prevent the company during its existence from aliening in fee land which it held in fee, or preclude the division of such property among its stockholders on dissolution.

The act of 1859 (chap. 209, § 2) authorizes plank-roads to purchase, take and hold lands necessary for branches, etc., and also to enter upon and take, by legal proceedings, the lands of any person necessary for like purposes. But as to lands which they shall legally enter upon and take by virtue of the act, and those only, their tenure is limited to so long as such lands shall be used for a road. (§ 8.) In this respect, all the acts are in harmony.

As to the land of which the plaintiff held the legal title at the time of his conveyance to the plank-road company, that conveyance passed all his estate and interest in the land. The price paid by the company must be deemed to be the consideration for the entire fee, and he consequently retained no property therein which would preclude the State, with

the assent of the plank-road company, from devoting the land to other public uses, though they should impose greater burdens upon it than a plank-road, or even from declaring by law that a surrender of any part of the road by the company, in the form prescribed by the act, should operate to transfer the title of the company to the town. (See *Heyward* v. *Mayor, etc.*, 7 N. Y., 314.) The words of the act of 1854 (chap. 87, § 1), which declare that the portion surrendered shall "cease to be the property of the company and revert and belong to the several towns," etc., are, we think, sufficient to make the surrender equivalent to an alienation by the company, and broad enough to embrace lands which never before belonged to the towns, as well as those which were, when acquired by the company, public highways. The act of 1854, under which the defendant justifies, cannot therefore be successfully assailed on the ground that it takes property of the plaintiff for public use without just compensation.

These views dispose of the case so far as the lands of which the plaintiff held the legal title, at the time of his conveyance to the company, are concerned.

As to those which at the time of that conveyance were in his possession, but the title whereto was in the heirs of James Heath, his conveyance passed to the company, at the least, the legal title to an undivided share, it appearing by the finding that James Heath was his father. His contract with Pratt also conveyed to the latter an equitable title to a like undivided share in the thirty-acre lot; and that share in the lands embraced in Pratt's conveyance, passed from him to the company. Pratt's payment of the purchase-money clearly entitled his grantee to the possession of that undivided share. Consequently, without considering the effect of the title to the other shares which the plaintiff acquired from his co-heirs, subsequently to the conveyances to the company, and even supposing that such title did not inure to the benefit of the company, the company, or those claiming through it, were, at the time of the alleged trespasses, at least tenants in common

with the plaintiff, and for that reason he could not maintain trespass against them for acts of the character established by the findings.

That consideration was sufficient to defeat the action, and the judgment must therefore be affirmed, with costs.

All concur.

Judgment affirmed.