HARRIET BEAL, APPELLANT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, RESPONDENT.

*Taking of land by a railroad company—when it takes a fee and not a mere easement— 1833, chap. 294—power of the legislature to extend the term of its corporate existence—to authorize its consolidation with other companies—effect thereof, on its title to land.*

In 1835 the Utica and Schenectady Railroad Company, incorporated under chapter 294 of 1833, instituted proceedings under its charter to acquire lands, then owned by the plaintiff, a minor, which resulted in the entry on May 9, 1836, of the final decree of the Court of Chancery required by the said act, which provided that upon the recording of the said decree the corporation should be possessed of the lands for the purpose of the said road, and that it might enter upon and take possession of and use the same. The term of the corporate existence of the company was fixed by the charter at fifty years, which term expired on April 28, 1883.

The Utica and Schenectady Railroad, after having entered into possession of the land, was, pursuant to an act of the legislature, legally consolidated with other railroad companies into a corporation known as the New York Central Railroad Company, all the rights, franchises and interests of the old company being thereby transferred to and vested in the new company, the act expressly providing that the title and real estate acquired by the old company should not be deemed to revert or be impaired by means of such act of consolidation or anything relating thereto. Thereafter, by virtue of an act passed in 1869, the New York Central Railroad Company was duly consolidated with the Hudson River Railroad Company under the name of the New York Central and Hudson River Railroad Company and the title to the said lands was thereby transferred to and vested in the defendant.

The plaintiff, claiming that the Utica and Schenectady Railroad Company only acquired an easement in the lands by the proceedings instituted under the act of 1833, which terminated with the expiration of the fifty years to which its existence was by that act limited, brought this action of ejectment to recover the lands.

*Held,* that the action could not be maintained.

That the proceedings, instituted under the act of 1833, transferred the fee and not a mere easement in the premises to the company. (Per HARDIN, P. J.)

That if this were so the expiration of the time limited for its corporate existence would not, without subsequent legislation, work a reverter of the title to the plaintiff. (Per HARDIN, P. J.)

That as the power to at any time alter, modify or repeal the act of incorporation was expressly reserved by the act of 1833 to the legislature, that body could extend the period of its corporate existence, or authorize its consolidation with other corporations, and authorize its successors to receive and hold its property and effects, including the premises in question, and to require and authorize them to be possessed of them for the purposes of a railroad and its use of the same. (Per HARDIN, P. J., and FOLLETT, J.; BOARDMAN, J., concurred in result.)

APPEAL from a judgment, entered in Oneida county upon findings of fact and law, made at the Oneida Circuit after a trial without a jury, dismissing the plaintiff's complaint, with costs.

The complaint alleges the creation of an incorporation called the "Utica and Schenectady Railroad Company" by the legislature on the 29th day of April, 1833, by the passage of chapter 294 of the Laws of that year, with a corporate existence of fifty years, and that the term expired on the 28th day of April, 1883. That the route of the railroad authorized by that act "was laid out and constructed by the said corporation over and across and upon lands and premises then owned in fee simple by the plaintiff herein, situate, lying and being in the village of Amsterdam, in the county of Montgomery. That in the year 1836, as appears by the records of the proceedings filed and recorded in the Montgomery county clerk's office, to which reference is hereby made, the said plaintiff then being an infant and remaining the owner in fee simple of the said lands and premises upon, over and across which said proposed line or route of said railroad or ways was laid as aforesaid, the said Utica and Schenectady Railroad Company instituted proceedings, as it was authorized by its charter to do (Session Laws of 1833, § 7, chap. 294), to acquire the right of way for its railroad tracks along, across and over the said lands and premises of the said plaintiff."

The complaint describes the lands. It also alleges that proceedings "were completed and the final order or decree of the chancellor recorded in the Montgomery county clerk's office on the 9th day of May, 1836, in book of deeds number three, at page twenty-eight, to which reference is hereby made, and that soon

thereafter the amount awarded to plaintiff, as and for her damages, by the commissioners appointed to make said appraisal, was paid to the guardian of the plaintiff."

The complaint further alleges, viz.: "The said corporation acquired an easement only, or the right to take possession of the said lands for the purposes of the said railroad during its corporate existence of fifty years only. That on the 28th day of April, 1883, the said lands and premises so taken and appropriated by the said Utica and Schenectady Railroad Company, as aforesaid, reverted to the plaintiff, and at that time she became entitled to the possession thereof as owner in fee simple."

It also alleges that the defendant is in the possession of the premises described, and that since the 28th day of May, 1883, it has wrongfully withheld possession thereof from the plaintiff. The answer sets up the incorporation, under the Laws of 1833, of the Utica and Schenectady Railroad Company, and that it "did duly take proceedings to acquire title to the land mentioned and described in the complaint, and such proceedings were duly had that a decree was duly made by the Court of Chancery of the State of New York, vesting the title to the said land and premises in the said Utica and Schenectady Railroad Company, whereby the said corporation became and was the absolute owner thereof."

It also alleges that the Utica and Schenectady Railroad Company entered into possession of the land and "took exclusive control thereof, and afterwards, by and pursuant to an act of the legislature of the State of New York, passed April 2, 1853, the said Utica and Schenectady Railroad Company was duly and legally consolidated with other railroad companies into a corporation known as the New York Central Railroad Company, whereby all and singular, the rights, franchises and interests of the said Utica and Schenectady Railroad Company, with all rights of property, real and personal, was, by the authority of the said act, transferred to and vested in the said New York Central Railroad Company, and in and by said act of 1853, it was expressly provided that the title and real estate acquired by the Utica and Schenectady Railroad Company should not be deemed to revert or be impaired by means of such act of consolidation, or anything relating thereto; whereby the said New York Central and Hudson River Railroad Company became

and was the owner of, and vested with the title to, the said land and premises described in the complaint, and the absolute owner of the same."

It is further alleged that subsequently and before 1869, this defendant obtained and became vested with the title of the premises claimed in the complaint, and that by virtue of an act passed May 20, 1869, the said New York Central Railroad Company was duly consolidated with the Hudson River Railroad Company, under the name and style of the New York Central and Hudson River Railroad Company, and that the title to said lands was transferred to and vested in the defendant, and the answer alleges that the defendant is the owner and lawfully entitled to the possession of the property described in the complaint.

By a stipulation used upon the trial it was admitted that by virtue of chapter 294 of the Laws of 1833, proceedings were instituted and prosecuted to a consummation in the Court of Chancery, whose decree was in all respects regular, valid and binding, so far as could have been made under chapter 294 of Session Laws of 1833, by the Court of Chancery, and contains a correct recital of the contents of the petition presented to the chancellor in said proceedings. That immediately after said decree was recorded in the Montgomery county clerk's office, as aforesaid, the said Utica and Schenectady Railroad Company paid the amount awarded, as required by said decree, and, pursuant thereto, took possession of the premises and occupied and used the same, for the purposes of its railroad, up to and until the year 1853, at which time the said Utica and Schenectady Railroad Company was, under the act of the legislature of the State of New York, passed April 2, 1853, duly and legally consolidated with other railroad companies into a corporation known as the New York Central Railroad Company.

The stipulation also admitted the incorporation of the defendant, and that thereupon it became vested with all the property held by the New York Central Railroad on the 30th day of May, 1869, and that the Utica and Schenectady Railroad Company, since the 19th day of May, 1836, and its successors,     *     *     *     " have been in the exclusive possession and occupation of said premises, using the same as a railroad, and that the defendant is still in the possession thereof, using it as and for a railroad and not otherwise."

After finding the facts already stated the circuit judge found, as a matter of law, viz., " that the plaintiff cannot maintain this action and the defendant is entitled to judgment dismissing the complaint, with costs."

*C. W. White*, for the appellant.

*D. M. K. Johnson*, for the respondent.

HARDIN, P. J.:

Whether the plaintiff is entitled to or interested in the lands described in the complaint depends upon the construction of chapter 294 of the Laws of 1833, and the force to be given to the proceedings had under that chapter to condemn the lands in question, or, in other words, did the proceedings had operate to transfer from the plaintiff the fee or a mere easement in the premises, limited to the period expiring on the 28th day of April, 1883? (2 Wood Railroad Law, 764.)

Section 7 of chapter 294 of the Laws of 1833, authorizes the corporation, first, to purchase, receive and hold such real estate as may be necessary and convenient in accomplishing the object for which this corporation is granted; second, it also authorized the corporation's agents, surveyors and engineers to enter upon such route, place or places to be designated; and, third, it authorizes " the said corporation to enter upon and take possession and use all such lands and real estate as may be indispensable for the construction and maintenance of said double railroad." * * * It also authorizes the corporation, fourth, to " receive, hold and take all such voluntary grants and donations of land and real estate as shall be made to the said corporation to aid in the construction, maintenance and accommodation of said railroad or ways; but all lands or real estate thus entered, taken possession of and used by the said corporation, *which are not donations, shall be purchased of the owner or owners of the same*, and at a price to be mutually agreed upon between them; in case of a disagreement in price, and before the making of any portion of the road upon said land, the directors of said corporation may present their petition to the chancellor, setting forth the necessity of such lands for making said railroad or ways, and of the attempt and failure to purchase the same, with the

name and residence of the owner and the reason why the purchase cannot be made. And the chancellor shall direct such notice to the owner or owners of such lands, as he shall deem proper and reasonable, of the time and place of hearing the parties; and upon proof of due service of such notice, and upon hearing the parties, the chancellor shall appoint three competent and disinterested freeholders of the county in which the lands are situated to be commissioners to appraise said lands. The said commissioners shall appraise said lands, and shall award to the owner or owners thereof what they shall deem to be the full value of the same; and shall be authorized to examine the lands, to administer oaths and hear testimony; and shall make their appraisement in writing without delay, under their hands, with a minute and accurate description of the land appraised with a map thereof, and shall report the same, with the testimony taken, to the Court of Chancery. The chancellor shall examine the report and shall hear the parties, if desired, and may increase or diminish the amount awarded if he shall be satisfied injustice has been done. Upon proof to the chancellor, within thirty days after his determination, of payment to the owner, or of the depositing to the credit of the owner in such bank as the said chancellor shall direct of the amount of such appraisement, and the payment of all expenses attending it, the said chancellor shall make a decree or order particularly describing the lands and reciting the appraisement, and the mode of making it, and all other facts necessary to a compliance of this section of the act. And when the said decree or order shall be recorded in the office of the clerk of the county in which the land is situated, whose duty it shall be to record the same, the said corporation shall be possessed of all the lands for the purpose of the said road, and may enter upon and take possession and use the same."

In ascertaining the proper construction to be given to the section under consideration, attention must be given to the words, viz.: "But all lands or real estate thus entered, taken possession of and used by the said corporation, which are not donations, shall be purchased of the owner or owners of the same, and at a price to be mutually agreed upon between them." This language is broad and comprehensive, apparently used for the purpose of including all lands which the road should acquire otherwise than by "donations."

It seems to relate not only to lands as to which there should be a voluntary conveyance, but to lands which should be acquired by resort to proceedings under the principle of eminent domain. The following language bears upon the construction which we have intimated should be given to the sentence just quoted, viz. : " In the case of a disagreement of price," the directors were authorized to present their petition to the chancellor, " setting forth the necessity of such lands for making said railroad or ways, and of the attempt and failure to purchase the same, with the name and residence of the owner." Thereupon the chancellor was authorized to appoint commissioners " to appraise said lands." Then follows a rule for the appraisal, commanding its commissioners to " appraise said lands, and shall award to the owner or owners thereof what they shall deem to be the full value of the same." The commissioners are then directed to make an appraisement in writing " with a minute and accurate description of the land appraised."

The section then provides that " upon proof to the chancellor * * * of payment to the owner, the chancellor shall make a decree particularly describing the lands and reciting the appraisement, the mode of making it, and all other facts necessary to a compliance with this section." Then follows a provision that when the decree shall be recorded " the said corporation shall be possessed of all the lands, for the purposes of said road, and may enter upon and take possession and use the same." It must be borne in mind that the language, which we have quoted, refers to the lands unqualifiedly. No words are used indicative of an attempt to authorize the taking of anything less than the fee. The concluding language of the section was probably inserted for the purpose of declaring that the company should be the owner of the lands.

The word " possessed " seems to be used as the equivalent of the word " owner." If we thus read the sentence, the statute declares that the company shall be. the owner " of all the lands upon payment of the price " or " appraisement " of the lands fixed by the commissioners. As we have already seen, in the early part of the section there was an intent evinced by the language used, that all lands should be purchased (except those donated), first, at price to be mutually agreed upon ; and, second, that in case of a disagreement of price, that the price should be named by

commissioners. Some stress is laid by the appellant upon the words found at the close of the section, viz.: "Said corporation shall be possessed of all the lands for the purposes of said road and may enter upon and take possession and use the same."

We are not able to construe these words as indicative of an attempt to limit the estate or of the title which should pass to the corporation under the proceedings. It may be conceded that those words required the corporation, or its successors, to use the land for railroad purposes. So far as public policy is concerned, the language may be regarded as sufficient to require the corporation created to devote the premises thus acquired to no other use or purpose.

It is not claimed, upon the facts before us, that the corporation thus created, or its successors, have devoted the lands to any other purpose than that of maintaining and operating a railroad thereon. If we are right in assuming that the fee passed under the proceedings to the corporation, then it possessed the right to use and occupy the premises in question, for the purpose of erecting, building or making a single, double or quadruple railroad or way, and by the charter it also possessed " the right of using the same in the manner    *    *    * directed " in the act " for and during the term of fifty years." It was thus permitted to operate its road, by express permission of the legislature, for the period of fifty years. But by the nineteenth section of the act it was expressly declared that the legislature may, at any time, alter, modify or repeal the act. So far, therefore, as the act is concerned, the act in question gave the corporation created by it certain powers. These powers were to be enjoyed by it for the period of fifty years. It was competent for the legislature to extend the period to a corporation thus created, or to so modify the charter, alter or amend it, that in conjunction with one or more other corporations, the same privileges might be exercised. But if we are right in assuming that the corporation received the same title or interest in virtue of the proceedings, which it acquired in lands where there was a mutual agreement as to price, the lapse of time without subsequent legislation would not work a reverter of the title to the premises to the plaintiff.

In *Heath* v. *Barmore* (50 N. Y., 302) it is held, viz.: " The rule of the common law, that real estate held by a corporation at the time of its dissolution reverts to the grantor, does not prevail in

this State in respect to stock corporations. Where lands are con-
veyed absolutely to a corporation having stockholders, no reversion
or possibility of a reverter remains in the grantor."

In such case it seems to be settled that property acquired by
purchase may be conveyed to a subsequent purchaser "discharged
of any right of reverter in the grantor or his heirs." (*Kenney* v.
*Wallace*, 24 Hun, 479; *Nicoll* v. *Erie Railway*, 12 Barb., 460;
S. C. affirmed, 12 N. Y., 121.)

It was held in the *Brooklyn Park Commissioners* v. *Armstrong*
(45 N. Y., 234), that "in the exercise of the right of eminent
domain, the legislature are the sole judges to what extent the public
use requires the extinguishment of the owner's title, and their
power in this respect (subject always to the necessity of making full
compensation) is not limited by any constitutional restriction. The
nature of the right acquired by the public in such cases, whether
an absolute title to, or a mere easement in, the lands, depends,
therefore, upon the intention of the legislature, to be deduced from·
the act authorizing the condemnation."

Judge FOLGER says in that case, at page 241: "The terms
employed in the fifth section, descriptive of what is to be acquired
and paid for, are broad, and would seem to include all of a proprietary
nature in the lands, or connected with or growing out of them.
And for relinquishing it all, the owner is to be paid the full value
of it all, without deduction. It seems inconsistent, that if the
legislature intended that the city should take but an easement, it
should be required to pay the value of the lands, and of all
hereditaments and appurtenances, and also the other loss and
damage to the owner from the taking, without deduction for benefit.
This would be to exact the price of the fee for taking a user only.
It could not have been intended that the owner should receive full
value, and yet have left to him a reversionary interest." (*Haldeman*
v. *The Pennsylvania Cent. R. R. Co.*, 50 Penn. St. R., 425; Cooley
on Limitation of Legislative Power, 552.)

This case was referred to by ANDREWS, J., in *Washington
Cemetery* v. *Prospect Park and Coney Island Railroad Company*
(68 N. Y., 595), with approbation. In the latter case the learned
judge refers to the statute of 1873, then under consideration, which
provided for the appointment of commissioners "to estimate the

value of the lands and premises required to be taken for said avenue, the damages to be sustained by any person interested. therein, by reason of such taking, and the benefits which will be derived by owners of the land within the district of assessment from the opening of the avenue," and he adds : ' The land is taken for an avenue, and this purpose is fully satisfied by the taking of an easement in the land for the street or highway." We think that case differs from the one now before us. *Brooklyn Park Commissioners* v. *Armstrong* (*supra*) was referred to and followed in *Gearty* v. *The Mayor* (49 How., 34).

In *Heyward* v. *The Mayor* (7 N. Y., 314) it was declared that the legislature has power to authorize the acquisition of the fee in lands of private persons, required for public uses, on payment of just compensation, and that when so acquired, no reversionary estate remains ; and that where the public exigencies require lands to be converted to some other purpose, they may be so converted. Near the close of the opinion in that case, WELLES, J., says : " A man is called upon to give up and part with his property for the public use. It is reasonable that he should do so and the law requires it of him ; a full indemnity is all that he can ask in return, and should satisfy him. Having received it, a demand for anything beyond must be founded upon a rule anything but equitable."

In *Story* v. *The New York Elevated Railroad Company* (90 N. Y., 172), TRACY, J., says : " The proceedings by which land is acquired by the exercise of the right of eminent domain amount to a statutory conveyance of the same to the public or the corporation, and there is no distinction between such a conveyance and a voluntary conveyance made for a public use."

When such proceedings are instituted, Blackstone says, viz.: " The public is considered as an individual treating with an individual for exchange. All that the legislature does is to oblige the owner to alienate his possessions at a reasonable price, and even this is an exertion of power which the legislature indulges with caution, and which nothing but the legislature can perform." (1 Black. Com., 139.)

It was competent for the legislature to enact, as it did in section 7 of the act of 1833, that " all lands or real estate thus entered upon, taken possession of, or used by the said corporation, which are not

donations, shall be purchased of the owner or owners of the same, and at a price to be mutually agreed upon between them, in case of disagreement of price," and to provide, in case of such disagreement, that the award of commissioners should be " what they shall deem to be the full value of the same," and that the corporation should pay such value to the owner, and that upon and after such payment the corporation should be deemed possessed of and to be the owner of the property required.

If we are right in the conclusion that the plaintiff parted with her whole title to the property when she received compensation to the extent of the full value thereof under the proceedings had, and that the corporation acquired, for a public use, the title and ownership of the property, it follows that the plaintiff had no title to, or right to the possession of, the premises in 1883, or at the commencement of this action.

It was competent for the legislature to amend the act of 1833, as in section 19 thereof it had reserved the power to do so, and it was within the power of the legislature, with the assent of such corporation, to authorize its successors to receive and hold his property and effects, including the premises in question, and to require and authorize the premises to be possessed " for the purpose of a railroad and its use of the same." These views lead to the conclusion that the decision at the circuit should be sustained. (*Terry* v. *N. Y. C. and H. R. R. R. Co.*, 67 How., 439; opinion by HAIGHT, J.)

Judgment affirmed, with costs.

BOARDMAN, J., concurred in result.

FOLLETT, J.:

Without expressing an opinion upon the question as to whether the Utica and Schenectady Railroad Company acquired an absolute fee, which could be conveyed and the land converted to other uses, I am of the opinion that the corporation acquired the right to use the land for railroad purposes so long as it, or any successor corporation is authorized to and does use the land for such purpose. Upon this ground, I vote for affirming the judgment, with costs.

Judgment affirmed, with costs.