# CIRCUIT COURT OF BALTIMORE CITY

Filed January 30, 1891.

HENRY W. CLASSEN ET AL.
VS.
THE BALTIMORE BELT RAILROAD COMPANY.

(See 74 Maryland, 363).

DENNIS, J.—

The Baltimore Belt Railroad Company was organized under the general railroad law, now incorporated in Article 23 of the Code of Public General Laws.

As the purposes for which it was designed required its passage through the City of Baltimore by means of a tunnel, and it was doubtful whether, under the provisions of the General Law, it could construct any other than a strictly surface road, application was made to the Legislature for an enlargement of its powers. That body, by the Act of 1890, Ch. 139, vested it with the right, in addition to the powers already possessed by it under the General Laws, to construct any part of its road "in a tunnel, under such ordinance or ordinances as may be passed by the Mayor and City Council of Baltimore relating to the route of said railroad through the city of Baltimore, and the mode, terms and conditions of the building of said railroad within said city."

By ordinance of the Mayor and City Council, passed under the authority thus conferred on the — day of May, 1890, the company was authorized to construct its road as follows: "Beginning at the junction of the line of the said Belt Railroad with the Baltimore and Ohio Railroad between Hamburg and Cross streets; thence in a northerly direction to the western side of Howard street, between Montgomery and Lee streets; thence along, in and occupying the western half of Howard street, parallel with the eastern line of said street and distant therefrom forty feet measured from the said eastern building line to the eastern limit of said railroad, to the south line of Camden street; the said railroad from where it intersects the west line of Howard street to its intersection with the south line of Camden street, to be depressed within a wall cut; thence along and under Howard street

by a tunnel to the northerly side of Richmond street; thence, &c., &c."; it is not necessary for the purposes of this case to consider the rest of the route prescribed by the ordinance.

The bill alleges, and the testimony shows, that, assuming to act under this ordinance and the Act of the Legislature referred to, the company is about to commence the construction of an open cut on Howard street, between Lee and the south line of Camden street, which will be ten feet below the surface of the street at its beginning at Lee street, and gradually growing deeper, owing to the grade of the street, will be twenty-four feet below the surface at the south line of Camden street, at which point the tunnel begins. The eastern line of this cut is to be only forty-one feet from' the eastern side of Howard street, and as it is to be protected by a stone wall along its sides five feet high and two feet thick, this thickness will still further reduce the width of the street to that extent. The street at present is eighty-two and one-half feet wide; and it is alleged, and I think the testimony shows, that the effect of the construction of this cut along the route and in the manner proposed, will amount practically, to a closing of so much of the street as lies west of the open cut, although that portion shall not be actually occupied by the road.

It is further alleged that the construction of the tunnel along the route proposed will run under the sidewalk in front of the property of one of the plaintiffs — Mr. Winternitz — situated at the northwest corner of Howard and Camden streets to the distance of some five feet, thereby weakening the foundation of his house and endangering its walls; while on behalf of another of the plaintiffs—Mr. Donohue—it is alleged that the proposed tunnel will run so near to a vault constructed by him under the bed of the street as to seriously weaken its walls. The other plaintiffs are mainly lot owners, whose property abuts upon the eastern line of Howard street, between Camden and Lee streets, and opposite the proposed open cut. Not one of the plaintiffs has any interest whatever in the fee of Howard street, but in each instance their title extends only to the line of the street. The bill asks for an injunction to restrain absolutely the construction of the proposed open cut, and also to prevent the building of the tunnel in such a manner as will interfere with or injure the property of such of the plaintiffs as reside north of the open cut and upon the west of Howard street. The bill, it will thus be seen, seeks to enforce no common right; the complainants are owners of several and distinct lots, having no common interest, and each seeks relief for special injury to his own property by reason of the proposed construction of the road. The injury to each is special and distinct, and as to some is inflicted in a different way from what it is to others. The bill is, therefore, clearly multifarious, because of the misjoinder of the parties. Is is a well settled rule of equity procedure that several parties, having separate claims, cannot unite them and ask for joint relief against the specific individual wrong done to each. This precise point has been decided in Hinchman vs. Patterson Avenue Railroad Company, 17 N. J. equity, and Marselis vs. Morris Canal Company, Saxton's Reports, 31; and the principle announced in these cases is fully sustained by the case of Miller vs. Baltimore County Marble Co., 52 Md. 642.

While this objection would, therefore, under the above authorities, furnish sufficient grounds for a dismissal of the bill, yet, in view of the very able and elaborate argument by the learned counsel upon both sides, I think they are entitled to an expression of the conclusions at which I have arrived upon the main point in controversy.

I will treat the bill, therefore, as rid of multifarious matter, and as filed by one alone of the property owners on the eastern side of Howard street, opposite to the proposed open cut; say, by Mr. Classen, as his case is perhaps the strongest of any of the plaintiffs.

It needs no argument or testimony, I think, to show that he will suffer substantial and permanent damage by the construction of the road in the manner proposed. The street opposite his premises is now 82½ feet wide; it is proposed to take and practically close one-half of it, and while the remaining portion will be rid of the railroad tracks of the B. & O. road, which run along the centre of Howard street, yet the width of the street is an element of value to his property, overbalancing the advantage which will be gained by the removal of this obstruction.

In addition to the narrowing of the street, the noise, smoke and cinders from trains passing along the open cut will be a source of constant annoyance, thus rendering the property less desirable for the purposes of his business. At the same time, the street, even when narrowed as proposed, will still be wide enough (forty feet), to answer fairly well the usual and ordinary purposes of a street, although, of course, not so advantageous to the plaintiff as if its present width was maintained.

It is equally clear that for all damages the plaintiff may suffer, either by the narrowing of the street or by reason of the annoyance and inconvenience from passing of trains, or in whatever way it may be caused by the location of the road, he has an adequate remedy at law. Section 169 of the General Railroad Law (Code, Article 23), under which the company was organized, provides that any railroad company laying down its tracks upon any public street shall be responsible for injuries to private property caused by such location; and even without this statute, in this State the company would be held responsible for any actual damage done to adjoining property by its occupancy of a public street, even though this occupancy was under proper State and municipal authority. Baltimore & Potomac Railroad Co. vs. Reaney, 42 Md. 117. But the question is not as to whether the plaintiff will be entitled to damages for injury he may sustain by reason of the building of the road, but is he entitled to an injunction to restrain the company from building it. It is claimed that he is entitled to that remedy, and upon two grounds:

1. Because the Act of the Legislature, giving authority to the Mayor and City Council to define the route, &c., of the road, only authorized a road to be constructed in a tunnel; and hence so much of the ordinance as permitted an open cut for any portion of the line is void. If this interpretation of the Act is correct, then the plaintiff is entitled to an injunction; for a road built in a public street without lawful authority is a nuisance; and if the plaintiff sustains, or is likely to sustain, special damage by reason of it, he is entitled to restrain its erection. But I think this construction of the statute is altogether too narrow, and if allowed would wholly defeat its intention. For, it is evident that there can be no tunnel without an approach by way of an open cut; and when the Legislature authorized the building in a tunnel they must necessarily have intended to authorize so much of an open cut as was necessary and proper, considering the grades, &c., for an approach to what was to be tunneled. If it was shown that under the pretense of approach to the tunnel the road intended to use more of an open cut than was fairly necessary for that purpose, it would be proper to restrain such a perversion of the authority under which they were acting; but no evidence has been offered to show that the open cut proposed extended for any greater distance than the necessities of engineering, owing to the grade of the street, required for a proper approach to the tunnel. The bill cannot, therefore, be maintained upon that theory.

2. But is is contended further that the plaintiffs, in addition to the right of easement in the street which he enjoys in common with other citizens, has, by virtue of his being an abutting owner, and although he owns no part of the fee of the street, special rights in the nature of incorporeal hereditaments in so much of the street as is opposite to his abutting property, i. e., the right to light and air, and access to and from his property, as they are furnished by existence of the street; that these rights are, "property" within the meaning of the provision of our State Constitution, which declares that "the Legislature shall enact no law authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation"; that any use of the street which interferes with or injures these rights, is a "taking" of his "property" within the meaning of that institution; and hence any Act of the Legislature which authorizes such use of the street without compensation to him first being made or tendered, is within the constitutional prohibition and void. If this contention is sound. the plaintiff is entitled to an injunction as prayed.

After a careful consideration of the numerous cases cited by the learned counsel on each side, I have come to the conclusion cases (to that, while a few which I will refer more especially later on), do hold this doctrine, yet

136

the very great weight of authority is opposed to it; holding that the abutting owner has no such interest in the street as is "property," which is "taken" within the meaning of the constitution, when a change in the use of the street is made under due legislative and municipal authority.

It is not possible within the limits of this opinion, to review any considerable portion of the cases which bear upon this question, I will refer to a few of the leading ones which are directly in point.

In Spencer vs. Point Pleasant R. R. Co., 23 W. Va. 407, the railroad company, acting under authority conferred by the Legislature and with the consent of the city' council, was constructing along the center of one of the streets of the town an approach to a bridge, consisting of trestle work and masonry, upon which the track of the railroad was laid, several feet above the surface of the street. Spencer, an abutting lot owner, sought by injunction to restrain the company from constructing this work in front of his lot until compensation should first be made to him as the owner of the fee in the street. In a most elaborate and thoroughly reasoned opinion by Green, J., the Court held that such use and occupation of the street was not a "taking" of the plaintiff's "property" within the meaning of the constitution, and refused the injunction.

In Arbenz vs. Wheeling & Harrisburg R. R. Co., 40 Eng. & Am. Ry. Cases, 284, the railroad company, under due legislative and municipal authority, was erecting its road in an open cut or excavation in the street opposite the plaintiff's premises; yet an injunction was refused upon the same principle, although the plaintiff, in addition to being an abutting owner, also owned the fee in the street. These cases go further than most of the cases, which, as a rule, hold differently, where the plaintiff is the owner of the fee in the street.

In Grand Rapids Co. vs. Heisel, 38 Mich., 62, Judge Cooley declares the rule to be that an abutting owner who does not own the soil of the street cannot recoved damages (in the absence of a statute conferring the right), for any injury to his adjoining property resulting from the construction of a steam railroad in the street; a fortiori, he could not enjoin its construction.

In Fulton vs. Short Route Co., 85 Ky., 640, it was held that where the construction and operation of a railroad over the streets of a city results in special and substantial injury to abutting lot owners, by reason of smoke and cinders, the cracking of walls, &c., they may recover damages for such injuries, but are not entitled to an injunction to restrain the building of the road. It proceeds upon the same theory as the other cases, i. e., that it is not a "taking" of the plaintiff's "property." This was the case of an elevated railroad, where the obstruction of the street, as far as it went, would necessarily be permanent and exclusive of any other use.

In Indiana vs. Eberle, 110 Ind. 542, it was held that an abutting owner could not maintain an action for damages to his property for an unlawful obstruction on the opposite side of the street by the unlawful construction thereon of an embankment eleven feet in width and five and one-half feet high by a railroad company for a road bed. (Another case of the permanent and exclusive appropriation of a part of the street). In Callender vs. Marsk, 1 Pick 418, the City Surveyor had cut down the street in front of the plaintiff's house, so that its value was materially decreased; it was held that while the plaintiff was entitled to recover for the consequential or indirect damages resulting from such action, yet it was not a "taking of property" within the meaning of the Constitution. In O'Connor vs. Pittsburgh, 18 Penna. St., 187, which was an action for damages for cutting down the street in front of the plaintiff's property, the Court said that while "the cutting down of the street consequent on the reduction of its grade left the building useless and the ground on which it stood worth no more than the expenses of sinking the surface of it to the common level," yet no "property" of the plaintiff was "taken," and that, in the absence of a statute conferring the right, the plaintiff was not even entitled to maintain an action for consequential damages. In Stetson vs. The Chicago and Evanston Railroad, 75 Ill. 74, the plaintiff, an abutting owner, applied for an injunction to restrain the operation of the defendant's road on a street in Chicago in front of the plaintiff's lot. The application was refused; and in its opinion the Court says: "No part of the plaintiff's land has been taken for the use of the road.

The right to relief is predicted on the alleged fact that the construction of the railroad track has depreciated and decreased in value and price of lots fronting on the avenue; that the running of trains of cars and locomotives would further diminish the value and price of lots, and would render access difficult and inconvenient. (A claim almost identical with the one set up in this case). The Court then proceeded: "Whatever damages, if any, the plaintiff has suffered, are consequential, and arise from the lawful use of the adjoining street, in which he has no interest except an easement in common with the public * * *. He has not been compelled to part with any of his private property, and whether he will sustain damage by reason of the construction of the road, is a matter that must be determined by proof of the consequences that will follow. The construction of the road-bed, and that the operation of trains, may or may not injuriously affect his property. That question can more properly be determined in an action at law."

It is hardly necessary to multiply citations of authorities. A like doctrine is held in many other States; but I think the cases quoted abundantly establish that the public streets are wholly within the control and regulation of the Legislature, and no use of them, made under its sanction and authority, whether by a municipal corporation or a railroad or other agent, amounts to the "taking" of the "property" of an abutting owner within the meaning of the constitution, no matter how serious may be the damages, he will sustain by reason of such action.

Without quoting further authorities, I will briefly call attention to a class of cases which I think must necessarily be based upon the same principle. A great many cases hold that when a railroad company, acting under lawful authority, uses the bed of a street to the injury of an abutting owner, he is entitled to damages if he owns the fee in the street; otherwise he is not, and it is *damumn absque injuria.*

Now it seems to follow that all these cases which hold that those abutting owners who do not own the fee in the street are entitled to no compensation, must do so upon the ground that, no matter how great the injury, such use

of the street is not a taking of their property within the meaning of the constitution; for if it was, he would be entitled to compensation for injury to his property just as much as for injury to his fee. And likewise, all those cases which allow him damages for such use of the street when he does own the fee, seem necessarily to negative the idea of his having any other property in the street than the fee, because the ownership of the latter is made the basis of his right to compensation.

This precise question has never yet been directly presented for adjudication to the Court of Appeals of this State; but in Mayor and City Council of Cumberland vs. Nillison, 50 Md. 138, the Court lays down the general doctrine in terms which seem to me necessary to cover this case. On page 147, the Court says: "How far municipal corporations are liable for consequential damages to private property resulting from the exercise of their corporate powers, or what will amount to the 'taking of private property for public use' in the constitutional sense of these terms, has been the subject of much discussion and controversy. Certain general principles seem, however, to have been clearly settled by the consent and weight of judicial authority. Thus it is well settled that such a corporation is not liable to an action for consequential damages to private property or persons (unless it be given by statute), where the act complained of was done by it or its officers under and pursuant to authority conferred by a valid act of the Legislature, and there has been no want of reasonable care or skill in the execution of the power, although the same act, if done without legislative sanction, would be actionable. Upon this principle it has been decided by a great preponderance of authority that municipal corporations acting under authority conferred by the Legislature to make and repair, or to grade, level and improve streets, if they excise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, for consequential damages to his premises, even though in grading and leveling the street a portion of the adjoining lot, in consequence of the removal of its natural supports

138

falls into the highway, and the same immunity exists if the street be embanked or raised so as to cut off, or render difficult the access to the adjacent property, and this, too, although the grade of the street had been before established and the adjoining property owner had erected buildings or made improvements with reference to such grades. Property thus injured is not in the constitutional sense taken for public use. This doctrine was long since announced by Courts of the highest authority, and by judges of great eminence and authority. * * * It is true that the Supreme Court of Ohio, in a series of decisions, has adopted a different doctrine and extended the liability of municipal corporations in such cases beyond the limits assigned to it elsewhere * * * but this doctrine has not only been refuted by the authorities to which we have referred, but the Court which announced it admits it to be in direct conflict with the decisions both in England and America." Later on, on page 154, Judge Miller very clearly shows that the doctrine of the Ohio cases was repudiated by the unanimous judgment of the Court of Appeals in the case of Barron vs. Mayor and City Council of Baltimore.

It will be observed that in the above case the Court confines the exemption from suit for consequential damages to municipal corporations, and it has held in B. & P. R. R. Co. vs. Reaney, 42 Md. 117, that a railroad company, although acting under due legislative authority, would not be entitled to such exemption. These cases are not in conflict, but proceed upon the distinction that in the one case the authority was conferred upon a municipal corporation, and in the other upon a private corporation in no way connected with the municipal government; and that while the State's own immunity from suit will be presumed to have been conferred by a grant of power to a corporation working for governmental purposes, no such presumption will be made in favor of any private or only quasi-public one.

On page 130 of Reaney's case, Judge Alvey states the distinction very clearly in the following words: "As against the municipal government in the careful exercise of its right to grade, change and improve the street, there could be no cause of action for any unavoidable injury done; but as against the appellants, a private corporation in no wise connected with the municipal government, obtaining authority to use the streets for its own private purposes and profits, the case is quite different. As against such party the owner of a plat of ground, with a building thereon, bounding on the street, is entitled to the natural support which the bed of the street may afford the foundation of his house. And notwithstanding authority may have been obtained by them from the city and State Legislature to make the extraordinary use of the street, yet that authority must be exercised at the peril of the party to whom it is delegated, and if any injury occurs to private property in the exercise of the power, the party producing it must be held liable."

So it is clear that Reamy's case goes no further than to hold that, as against a private corporation, a property owner is entitled at common law to maintain an action for consequential damages for injury to his property resulting from its use of a public street, although it may act under due legislative authority (a right still further secured to him now by the Act of 1876, 1 Code, Art. 23, Sec. 169); and there is nothing in it to give sanction to the contention that such injury amounts to a "taking of property" within the constitutional sense of those words. On the contrary, the language first quoted would seem necessary to negative any such theory; for it concedes that no remedy exists in such a case as against a municipal corporation; and yet, if such injury amounts to a "taking of property" within the meaning of the constitution, the Legislature would be just as powerless to authorize this "taking" in favor of a municipal corporation without compensation being first made or tendered, as it would be in the case of any other agency authorized by it to make use of the street. The constitutional prohibition is against the Legislature itself passing any law authorizing property to be taken without compensation, and it can exempt neither a municipal corporation or any one else from its operation.

I think, therefore, that the principles laid down in the two cases last quoted settle the question we are now discussing; but even if I should be wrong in this, and the Maryland authorities are not broad enough to cover this precise point, I am still of the opinion

that the authorities already quoted from other States and the Supreme Court of the United States, very much outweigh the few cases which can be cited in favor of a contrary doctrine. So far as my examination has shown, these cases are as follows: The Ohio cases, one case in Minnesota which is based upon the New York cases (Adams vs. C. B. & N. R. R., 286), and the four New York Elevated R. R. cases, viz: Story vs. N. Y. R. R., 90 N. Y. 122; Lake vs. M. E. R. R., 104 N. Y. 268; Abendroth vs. N. Y. E. R. R., and Kane vs. M. E. R. R.—the last two being yet unreported. As we have seen, the Ohio cases recognized by the Courts of that State as establishing a doctrine peculiar to it, and are expressly repudiated by our Court of Appeals in Nillison vs. M. & C. C., and also by the Supreme Court of the United States in Transportation Co. vs. Chicago, 90 U. S. 641.

The New York cases referred to hold that an abutting owner, having no title to the fee of a street, has yet such an interest therein (by way of easement, for ingress and egress to and from his premises, and also for the free and uninterrupted passage and inculation of light and air through and on such street for the benefit of property situated thereon), as to be "property" within the meaning of that term as used in the constitution, and compensation must be first made or tendered the owner before it can be taken from him for public use; and that the erection of an elevated railroad, the use of which is intended to be permanent in a public street, and upon which cars are propelled by steam engines, generating gas, steam and smoke, and interrupting the free pasage of light and air to and from adjoining premises, constitutes a taking of the easements by the railroad company.

Now, as Judge Dillon says (2 Dillon on Mun. Corp., Sec. 656, 6), these decisions are contrary to the great weight of authority in this country, and it is impossible to reconcile them with the earlier cases in the same state.

In Radcliff's Executors vs. Brooklyn, 4 Comstock, 195, the New York Court of Appeals decided that the city was not liable to a lot owner on a street for damages caused his lot by a change in the grade of the street, although the street was so cut down that he was deprived of all feasible access to it, and the walls of his house were seriously endangered. The decision was put upon the express ground that the damages were consequential and did not constitute a taking of property within the meaning of the constitution. (This case was cited with approval by our Court in Willison vs. Mayor and City Council). In People vs. Kerr, the proof was that the construction of the road would cause serious damage to the abutting owners, depreciating their property from twenty to twenty-five per cent., and the Court found that the construction of the road "would be a material interference with and injury to the use and enjoyment of the lots fronting on said street in such manner and to such extent that the same would constitute a continuous private nuisance to the plaintiffs as owners of adjoining lots; and yet it held the plaintiff could not maintain an action. This case was approved in Kellinger vs. The Street Ry. Co., 50 N. Y. 306, where it was held that where a railroad, acting under legislative authority, laid its track as near the sidewalk in front of plaintiff's premises as not to leave sufficient space for a vehicle to stand, and that he and his family were greatly incommoded in leaving and returning to their residence, and the rental value of his premises were greatly depreciated; yet the plaintiff had no cause of action. In speaking of People vs. Kerr, Church, C. J., said: "It clearly holds that the abutting owners had no property in the street, which was taken for the railroad, for which they were entitled to compensation." See also 37 Barb. 557; 38 Barb. 369.

In view of these earlier decisions, the later New York cases must be considered as establishing a new departure. And an examination of Story's case, in which the new doctrine was for the first time announced, will show that the conclusion was not reached without great difficulty. It was twice argued, before a bench of seven members, and was decided by a bare majority of one, three judges uniting in an opinion of vigorous dissent by Judge Earl. It is true that in the three later cases there was no dissent; but in Lahr's case, 104 N. Y.—the next one decided—it was expressly stated (p. 287), that the loss of Story's case was accepted upon the principle of *stare decisis*.

Attention must be called to the case of Forbes vs. The Rome, &c., Railroad Company, 121 N. Y., 505, in which (as late as June, 1890, and after both the Story and Lake cases), the same Court held that a "steam railroad company, which under proper license, lays its track upon the surface of a street, is not liable for damages resulting from a reasonable use thereof to the easement of an abutting land owner, who does not own the fee of the street." In other words, the interference with the abutting owner's rights of ingress and egress to and from his lot, and of air and light, and the annoyance to him from the smoke, noise and cinders of passing trains, will, in the case of an elevated railroad, amount to a taking of his property to the extent that he will be entitled to an injunction to restrain the construction of the road until compensation is first made him; while in the case of a steam surface road, exactly the same injuries will not even entitle him to a suit for consequential damages. I am unable to see any distinction between the two cases; nor how the doctrine of Story's cases and those following it, can be reconciled with the earlier New York cases, which later have, as we have seen in Nillison vs. M. & C. C., met the express approval of our Court of Appeals.

I am of the opinion, therefore, that the bill must be dismissed, and the plaintiffs left to recover such consequential damages as may result to their property from the building of the road by an action at law, as provided for in Section 169, Art. 23 of the Code.