## JOHN F. RICHARDS, Appellant, v. NORTHWESTERN COAL AND MINING COMPANY.

### Division One, May 31, 1909.

1. **CORPORATION: Dissolved by Time: Presumption That It Has Officers.** Presumptions of fact never arise against well known and usual occurrences and conditions of things. The court will not in the absence of evidence presume that a corporation whose charter expired in 1886, and which was in 1875 adjudged a bankrupt, at the time of its civil death did not have a president or directors, for common knowledge teaches that upon the dissolution of a corporation it invariably has such officers.

2. ————— Dissolution: Title to Real Estate. Upon the dissolution of a corporation its real estate does not revert to its grantor. It vests in its then president and directors or managers of its affairs as trustees to be administered by them for the benefit of its creditors and stockholders.

3. —————: Adjudged a Bankrupt: Deed by Assignee After Discharge: Correction by Later Deed. The assignee in bankruptcy of an insolvent corporation had no authority, after the termination of the bankruptcy proceedings and his discharge as assignee, to convey the unmined coal under certain described land, which came into his hands as a part of the assets of the bankrupt corporation; and the mere fact that he recited in the deed that it was executed to correct a former deed gave it no additional force, especially where the former deed did not refer to the coal, but related to other property.

4. QUIETING TITLE: Adjudging Neither Party to Be Owner. In a suit to quiet title under Sec. 650, R. S. 1899, where plaintiff prays the court to ascertain and determine the title of the parties and defendant denies plaintiff's title and sets up title in itself, it is the duty of the court to ascertain and determine the title of both plaintiff and defendant, and if neither has title to so adjudge and decree. But such a judgment affects only their title, and does not adjudicate the rights and equities existing between defendant and any other person not made parties.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*T. E. Francis* for appellant.

(1) The common law of England is in force in this State. Sec. 976, R. S. 1899. (2) At the common law, upon the dissolution of a corporation, its real property reverts to the grantor. Knight v. Wells, 1 Lutwitche 519; Atty-Genl. v. Lord Gower, 9 Mod. Rep. 226; Prior of Spalding's Case, 7 Edw. IV. 10-12; 1 Coke on Littleton, Chap. 13, p. 157; 1 Blackstone's Com. 484; 2 Kent's Com. 307; Angell & Ames on Corporations (11 Ed.), 195; Fox v. Horah, Iredell (36 N. C.) 358; State Bank v. State, 1 Blackford (Ind.) 282;

White v. Campbell, 5 Humph. (24 Denn.) 38; Bingham v. Weiderwax, 1 Comst. (N. Y.) 509; Nicoll v. Railroad, 12 Barb. (N. Y.) 465; Hooker v. Utica Turnpike Co., 12 Wend. (N. Y.) 371; Life Assn. v. Fassett, 102 Ill. 315; Titcomb v. Ins. Co., 79 Maine 315. (3) Section 976, R. S. 1899, which provides that upon the dissolution of a corporation, its directors shall have power to administer its affairs and dispose of its real property has no application to this case, because: (a) If the corporation in question had directors at the time of its dissolution, they failed to exercise this power. The statute did not cast title upon them *ipso facto*, by virtue of the dissolution, but merely gave them a right to acquire title by taking affirmative action; and affirmative action not having been taken by them, title did not attach. This statute is in derogation of the common law, and should be strictly construed. Titcomb v. Ins. Co., 79 Maine 315; Fox v. Horah, 36 N. C. 358. (b) Because, presumptively, said corporation had no directors at the time of its dissolution. In 1873, it was adjudged a bankrupt, and the assignee in bankruptcy was discharged in 1878. In 1886, by virtue of the expiration of its charter, it became dissolved, at and after which time no action was taken by any one assuming to be a director of said corporation looking to a recovery and disposition of the land in question for the benefit of stockholders. Under these facts, the presumption is, that there were no directors to exercise the power conferred by section 976, consequently said statute does not apply, and the land reverted to plaintiff's devisor, by virtue of the common law.

*Gage, Ladd & Small* for respondent.

(1) Upon the dissolution of a corporation, the title to its real estate does not revert to the grantor. The doctrine that upon the dissolution of a corporation, whether by expiration of its charter or otherwise,

the title to its real estate reverted to the grantor, if such doctrine ever existed, is a relic of barbarism and is nowhere now recognized as the law. McCoy v. Farmer, 65 Mo. 249; Morrill v. Railroad, 96 Mo. 177; R. S. 1879, sec. 744; R. S. 1899, sec. 976; Sword v. Wickersham, 29 Kan. 537; Mormon Church v. U. S., 136 U. S. 47; Bacon v. Robertson, 18 How. 487; 5 Thomp. on Corp., secs. 6745, 6746; Heath v. Barmore, 50 N. Y. 305; 2 Cook on Corp. (5 Ed.), sec. 641; Lindeman v. Rusk, 125 Wis. 210; Huber v. Martin, 127 Wis. 412. In plaintiff's brief, Fox v. Horah, 36 N. C. (1 Iredell's Eq.) 358, is referred to and relied on. That case was decided in June, 1841. It was explicitly overruled by the same court in Wilson v. Leary, 120 N. C. 90, decided in February, 1897. Shayne v. Evening Post Pub. Co., 168 N. Y. 70; Gray on Perpetuities (2 Ed.), secs. 44-51a. Nicoll v. Railroad, 12 Barb. 465, is referred to by plaintiff in his brief. That case was decided by the Supreme Court of New York in 1852, while the cases from the New York Court of Appeals, supra, were decided, Heath v. Barmore, in 1872; Shayne v. Evening Post Pub. Co., in 1901. (2) The Central Coal and Mining Company was a business corporation, whose members were stockholders owning shares of its capital stock. Such corporation as this could not exist without stockholders. Bankruptcy does not destroy a corporation. And there having been, *ex necessitate,* stockholders at one time, it follows, *ex necessitate,* that those persons, or their successors by transfer of their stock or by the laws of descent, are still the owners of their shares. There were also directors, and if their offices have not been filled by others, they are still directors. So far from there being a presumption that there were no directors or stockholders, the presumption to the contrary state of facts is conclusive. If defendant is not the owner of this property by virtue of the various conveyances in evidence, there are some persons, somewhere, who

are entitled to it, and, in the language of Wilson v. Leary, supra, it is no concern of the plaintiff who they are or where they are, or whether they ever assert their rights.   His ancestors having once sold this property, and received and kept the price of it, this plaintiff—least of all men in the world—will be heard to say, as against this defendant, who has in good faith bought, paid for and occupied it, that no other persons have asserted their claims to it, and, therefore, that plaintiff may take it away from the defendant.   (3) Plaintiff was not in possession.   To maintain an action under Sec. 650, R. S. 1899, plaintiff must either have title or be in possession.   Manning v. Coal Co., 181 Mo. 359; Gordon v. Park, 202 Mo. 236, 117 S. W. 1163.   (4)   Even if defendant have no title, if plaintiff does not prove title or possession, his petition must be dismissed.   He must recover upon the strength of his own title and if he has none he cannot succeed by showing that defendant has none.   If the plaintiff fails to establish either title or possession, it becomes entirely immaterial where the title, in fact, rests; the court makes no inquiry as to that, the case goes no further, but the petition is dismissed.   Morrill v. Douglass, 14 Kan. 294; Myrick v. Coursay, 32 Minn. 153; Herrick v. Churchill, 35 Minn. 318; Jellison v. Halloran, 40 Minn. 485; Pinney v. Russell, 52 Minn. 443. (5) It was error in the court below to find in this proceeding that defendant had no title.   The court should, when it found that plaintiff had neither title nor possession, have dismissed the case, and made no finding as to the existence or non-existence of title in defendant.   It will be time enough to find that defendant has no title when some one appears and attacks it who has a title.

WOODSON, J.—This suit was begun in the circuit court of Macon county to determine the title to

the coal underlying forty acres of land situated in said county. This suit is based upon section 650, Revised Statutes 1899.

The judgment below was to the effect that neither plaintiff nor defendant had any estate, right, title or interest in or to said coal. From that judgment both parties duly appealed.

The petition is in the form usual in such cases, alleging that plaintiff owned the coal in controversy, and that defendant made some claim of title to the same, the precise nature of which was unknown to plaintiff and could not, therefore, be described; and praying the court to hear evidence with respect to the claims of title of the parties, and to ascertain, determine and adjudge their respective rights and interests.

The answer of defendant is a general denial, a plea of title in defendant, and pleas that the action is barred by the ten and twenty-year Statute of Limitations.

Plaintiff's reply is a general denial.

The case was tried on the following agreed statement of facts:

"For the purpose of the trial of this case at the present term of this court it is hereby stipulated between the parties hereto:

"1. That on the fifth day of December, 1867, John Richards was the owner in fee of the southwest quarter of the northwest quarter of section 23, township 57, range 15, in Macon county, Missouri. That on the said day, the said John Richards and Elizabeth, his wife, executed, acknowledged and delivered to the Central Coal & Mining Company of Missouri a warranty deed, by which they conveyed to said Central Coal & Mining Company of Missouri all the mineral coal lying, being and situate underneath the surface of the said southwest quarter of the said northwest quar-

ter, and that the said deed was filed for record in the office of the recorder for said Macon county on the seventh day of December, 1867, a copy of which deed is hereto attached, marked 'Exhibit 1,' and made a part of this stipulation.

"2.   That the said Central Coal & Mining Company of Missouri was on the eleventh day of December, 1866, a corporation organized and created under and by virtue of the laws of the State of Missouri for a period of twenty years, as appears by a certified copy of the articles of the association of said corporation, hereto attached and made a part hereof and marked 'Exhibit 2.'

"3.   That the said John Richards departed this life on the twenty-eighth day of June, 1898, and that by his last will and testament duly proved and admitted to probate on the seventh day of July, 1898, he devised the said southwest quarter of the said northwest quarter of section 23, township 57, range 15, to his son, John Franklin Richards, the plaintiff, according to the terms of his said last will and testament, a copy of which is hereto attached and made a part of this stipulation and marked 'Exhibit 3.'

"4.   That the said John Richards left surviving him a widow, and said widow by an antenuptial agreement duly executed and recorded in said Macon county, Missouri, released and relinquished her dower to the said land, as appears by an exhibit hereto attached and hereof made a part, marked 'Exhibit 4.'

"Either party shall have the right at the trial to introduce any other competent evidence not inconsistent with the above stipulation."

By other evidence introduced, it was proven that in 1873 said Central Coal & Mining Company was adjudged a bankrupt, and its affairs were administered by an assignee from that time until the year 1878, when

having reported that he had fully discharged his trust, said assignee was discharged.

The register in bankruptcy, by deed dated August 25th, 1874, conveyed the coal to J. E. Hale, the assignee in bankruptcy. Hale afterwards resigned as assignee, and W. G. Forman was appointed in his stead. After this substitution, Hale, by deed dated July 27, 1875, conveyed the coal to said Forman. After Forman's discharge as assignee and after the bankrupt estate was closed up, he by deed dated July 31, 1884, conveyed to E. V. Snively, W. J. Loomis and L. J. Loomis, the coal in question, and some other property. This deed recites that the property described in it had been ''intended· to be conveyed by Forman to Sidney Bartlett and Nathaniel Thayer for a valuable consideration by them paid;'' that ''Bartlett and Thayer had transferred all their interest in the property described to Loomis, Snively and Loomis,'' or their successors; that ''in consideration of these facts, and in view of the fact that said premises were overlooked and not conveyed to Bartlett and Thayer,'' Forman conveys them to Loomis, Snively and Loomis.

The defendant by mesne conveyances claims title to the coal through said Snively and Loomis.

## OPINION.

I. It is the contention of counsel for plaintiff, that upon the termination of the bankruptcy proceedings in 1878 against the Central Coal and Mining Company, all of the property thereof not disposed of by the assignee reverted to the company; and that upon its dissolution by limitation, December 11, 1886, all of its undisposed of real property by operation of law reverted to the grantor, John Richards, and that upon the death of the latter, the title thereto passed to his son, the plaintiff herein.

That contention is most earnestly denied by counsel for defendant; and they insist that under section 976, Revised Statutes 1899, which had been in force for many years prior to the organization of the Central Coal & Mining Company, the coal in question became vested in the officers of the company for the purpose of paying the debts and for the use of its stockholders.

Said section 976 reads as follows: "Upon the dissolution of any corporation already created, or which may hereafter be created by the laws of this State, the president and directors or managers of the affairs of said corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of such corporation, with full powers to settle the affairs, collect the outstanding debts and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same; and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

Plaintiff insists that said section has no application to the facts of this case, for the reason assigned —that at the time of the dissolution of the Central Coal & Mining Company it had no president, directors or managers of its affairs, and that he or they could not, therefore, act as trustees for said corporation in the collection of its debts, or make distribution of its money and property among its stockholders.

There is no evidence contained in this record which tends to show that said corporation at the time of its dissolution had no such officers or stockholders.

Counsel for plaintiff tries to supply that omission by insisting that the courts in the absence of evidence must presume that there were none such. We can indulge in no such presumption, for the reason that presumptions of fact never arise against the well-known, usual occurrences or condition of things; such a corporation cannot be organized or exist without officers and stockholders, and common knowledge and experience teach us that upon the dissolution of a business corporation, it invariably has a president or other chief officers, directors and stockholders. That being true, instead of presuming this company had none such, the presumption must be to the contrary, that it did have such officers and stockholders.

But suppose we should indulge in that presumption, and concede for the sake of argument that said section 976 has no application, for the reason that there would be no one to collect and disburse the corporation's moneys and property, then would plaintiff be entitled to maintain this action? While the authorities are not uniform upon that question, yet the overwhelming weight thereof is against plaintiff's contention, that upon the dissolution of a corporation its real property reverts to the grantor.

We will review some of the authorities cited by counsel for each party.

Angell & Ames on Corp. (11 Ed.), sec. 195, in treating this question uses this language: "At common law, upon the dissolution or civil death of a corporation, all its real estate remaining unsold, reverts back to the original grantor or his heirs; for, says Coke, 'In case of a body politique or incorporate, the fee simple is vested in their politique or incorporate capacity created by the policy of man, and therefore the law doth annex the condition in law to every such gift or grant, that if such body politique or incorporate be dissolved, that the donor or grantor shall re-enter, for that the cause of the gift or grant faileth.' The

grant is indeed only during the life of the corporation, which may endure forever; but when the life is determined by the dissolution of the body politic, the grantor takes it back by reversion, as in the case of any other grant for life." ·

Coke on Littleton, vol. 1, chap. 1, par. 13b, used this language: "For if land holden of I. S. be given to an abbot and his successors, in this case if the abbot and all the convent die, so that the body politique is dissolved, the donor shall have again this land, and not the lord by escheat. And so if land be given in fee simple to a dean and chapter, or to major and commonalty, and to their successors, and after such body politique or incorporate is dissolved, the donor shall have again the land, and not the lord by escheat. And the reason and the cause of this diversity is, for that in the case of a body politique or incorporate the fee simple is vested in their politique or incorporate capacity created by the policy of man, and therefore the law doth annex the condition in law to every such gift and grant, that if such body politique or incorporate be dissolved, that the donor or grantor shall re-enter, for that the cause of the gift or grant faileth."

The same question came before the King's Bench in the case of Attorney-General v. Lord Gower, 9 Mod. l. c. 226, and among other things Lord Chancellor Hardwicke said: "Besides these estates that moved to the corporation from the hands of private donors, and the corporation leases or is dissolved, the land will not escheat to the crown upon their dissolution, because as Lord Coke says in his First Institute, 13b, if lands are given to corporate bodies by private donors, and the corporation leases or is dissolved, the land will not escheat to any body, but will revert to the private givers."

In the case of State Bank v. State, 1 Blackf. (Ind.) l. c. 282, the Supreme Court of Indiana, in the discussion of this question, said: "We have thus far

examined the judgment which directs a seizure of the goods and chattels, rights and credits, lands and tenements, of the corporation, on the assumed position that they will necessarily fall to the State on the dissolution. of the corporation.  We shall now inquire into the correctness of this position.  In order to elucidate the subject, we shall examine it in detail; and in the 1st place inquire, what becomes of the lands and tenements—2dly, what becomes of the goods and chattels —and 3rdly, what becomes of the rights and credits, of the corporation; and we shall find that each of these three items is governed by different principles.  1st. As to the land and tenements.  'When a corporation is dissolved,' says Sir Wm. Blackstone, 'the land and tenements revert to the person or his heirs who granted them to the corporation; for the law doth annex a condition to every such grant, that if the corporation be dissolved, the grantor shall have the lands again. The grant is only during the life of the corporation, which may endure forever; but when that life is determined by the dissolution of the body politic, the grantor takes it back by reversion, as in the case of every other grant for life.'  [1 Bl. Com., 484.]  This is the doctrine advanced by Lord Coke.  [Co. Litt., 13b.    See also 2 Kyd on Cor., 516; 2 Bac., 32; 2 Cruise, 493; and Colchester v. Seaber, 3 Burr. 1866.] We see but little in the books that contradicts or questions those authorities, and the cases that look a different way maintain that the lands would escheat. [2 Bac. 32.]  If either of those principles be correct, we feel warranted in determining that the corporate lands and tenements cannot be seized into the hands of the State, and certainly not in the manner contemplated by this judgment.''

In the case of White v. Campbell, 5 Hump. l. c. 39, the Supreme Court of Tennessee used the following language: ''Chancellor Kent, in the second volume of his Commentaries, says:    'According to the set-

tled law of the land, upon the civil death of a corpora-
tion, all its real estate remaining unsold reverts back
to the original grantor and his heirs.' "

The Supreme Court of Illinois, in the case of Life
Association v. Fassett, 102 Ill. l. c. 323, used this lan-
guage: "Upon the dissolution or civil death of a cor-
poration, all its real estate, by the strict rule of the
common law, reverts to the original owners or their
heirs, and all its personal estate vests in the Crown,
in England, and the State here, and all debts due to or
from it are by operation of law extinguished. [Angell
& Ames on Corporations, 195.]"

The Supreme Court of Maine, in the case of Tit-
comb v. Ins. Co., 79 Me. l. c. 316, said: "But this is
a mutual company and has no stockholders, and the
provisions cited do not apply. According to the old
settled law of the land, says Chancellor Kent, upon the
civil death of a corporation, when there is no special
statute to the contrary, all its real estate reverts to the
grantors and their heirs, and all its personal estate
vests in the people. [2 Kent (10 Ed.), 385-6.] To the
same effect is Angell & Ames on Cor. (2 Ed.), c. 22,
sec. 6."

In the case of Fox v. Horah, 1 Ired. Eq. (N. C.)
l. c. 361, the Supreme Court of North Carolina, in dis-
cussing this question, said: "We believe that the rules
of the common law, governing the disposition of the
property which the corporation held at the moment of
death are well settled, though differing according to
the character of the property upon which they operate
as being either realty, personalty, or choses in action.
The real estate remaining unsold reverts to the gran-
tor and his heirs, 'because' (in the language of Lord
Coke) 'in the case of a body politique or incorporate
the fee is vested in their political or incorporate capac-
ity, created by the policy of man, and therefore the law

221 Sup—11

doth annex a condition in law to every such gift and grant that if such body politic or incorporate be dissolved, the donor or grantor shall re-enter, for that the cause of the gift or grant faileth.' "

The following authorities also sustain plaintiff's contention: Knight et ux. v. le Corporation de Wells, 1 Lutwyche, 1. c. 519; 1 Blackstone's Com., 484; 2 Kent's Com, 307; Hooker v. Turnpike Road Co., 12 Wend. 371.

As before stated, the great weight of authorities deny that upon the dissolution of a corporation, whether by expiration of its charter or otherwise, the title to its real estate reverts to the grantor, and most of them hold that if such doctrine ever existed, it is a relic of barbarism and is now not recognized as the law.

This court, speaking by Judge NORTON, said: ".After the statement of the doctrine in Angell & Ames on Corporations, that at common law, after the civil death of a corporation, all debts due to and from it are totally extinguished, the author adds, that 'the rule of the common law in relation to the effect of dissolution upon the property and debts of a corporation has in fact become obsolete and odious. Practically it has never been applied in England to insolvent or dissolved moneyed corporations, and in this country its unjust operation upon the rights of both creditors and stockholders of this class of corporations is almost invariably arrested by general or special statute.' " [McCoy v. Farmer, 65 Mo. 244, 1. c. 249.]

The same question again came before this court in a case of ejectment by the heirs and devisees of one Forsyth, who had conveyed the real estate to a certain corporation. It was claimed that the existence of the corporation had ceased by operation of law, and, therefore, that the title to the real estate reverted, by operation of law, to the heirs of the grantor. The judgment below was for the defendant, and it was affirmed by

the Supreme Court. Judge BLACK, writing the opinion, said: "Suppose that under this statute the corporate powers of the St. Louis County Railroad Company ceased, because of its failure to complete and put in operation any part of the road within ten years, that it thereby forfeited its franchise to be a corporation; and suppose further that a decree of forfeiture had been duly pronounced, still its unsold property would vest in the directors for the purpose of paying its debts and for distribution among the stockholders." [Morrill v. Railroad, 96 Mo. 174, 1. c. 177.]

The Supreme Court of Kansas denied that doctrine in the following language: "It will be seen that, by virtue of the provisions of section 42 of the act relating to corporations, upon the dissolution of any corporation, property belonging to it does not revert to the original owner of the property, but it is either placed in the hands of a receiver, or goes into the hands of the president and directors, or managers of the affairs of the corporation, for the purpose that the affairs of the corporation may be settled, and the debts paid, and the property distributed among the stockholders of the corporation. Hence, even if the town company had not conveyed away the property in dispute to Clogston or others, still it would not revert to the plaintiff, but, after paying the debts of the corporation, would go to the stockholders thereof. We suppose that the deeds from the town company to Clogston, and from Clogston to Rawson, and from Rawson to the defendant, are legal and valid; but it is not necessary to enter into a consideration of their validity or invalidity, for, whether they are valid or invalid, the plaintiff has no right to recover in this action. All his title to the property in controversy passed from him on May 9, 1873, and, so far as the evidence shows, no portion of the title to any part of the property in controversy has ever passed back again to him." [Sword v. Wickersham, 29 Kan. 1. c. 749.]

In the Mormon Church case, Mr. Justice BRADLEY said: ''When a business corporation, instituted for the purpose of gain, or private interest, is dissolved, the modern doctrine is that its property, after payment of its debts, equitably belongs to its stockholders.'' [Mormon Church v. United States, 136 U. S. l. c. 47.]

Justice CAMPBELL, speaking for the Supreme Court of the United States: said: ''The effects of a dissolution of a corporation are usually described to be, the reversion of the lands to those who had granted them; the extinguishment of the debts, either to or from the corporate body, so that they are not a charge nor a benefit to the members. The instances which support the *dictum* in reference to the lands, consist of the statutes and judgments which followed the suppression of the military and religious orders of knights, and whose lands returned to those who had granted them, and did not fall to the king as an escheat; or of cases of dissolution of monasteries and other ecclesiastical foundations, upon the death of all their members; or of donations to public bodies, such as a mayor or commonalty. But such cases afford no analogy to that before us. The acquisitions of real property by a trading corporation are commonly made upon a bargain and sale, for a full consideration, and without conditions in the deed; and no conditions are implied in law in reference to such conveyances. The vendor has no interest in the appropriation of the property to any specific object, nor any reversion, where the succession fails.'' [Bacon v. Robertson, 18 How. 480, 487.]

Thompson on Corporations states the rule as follows: ''We have had occasion to note, in passing, the principle of the ancient common law that, upon the dissolution of a corporation, its real property, acquired by gift or grant for corporate use, reverts to the donor or grantor, or his heirs; and we have also noticed the pointed denial by Chancellor Kent that such

was ever the law of England as regards moneyed corporations. . . . Notwithstanding this language, the author does not believe that a case can be found, decided in any of the English courts within the last hundred years, where it was held that land which had been purchased by an incorporated joint-stock business company, for a consideration, reverted, on the dissolution of the corporation, to the grantor or his heirs; or, where the personal property of such a corporation, upon the event of its dissolution, was held to escheat to the crown. . . . The modern rule then is, that, upon dissolution, the title to real property does not revert to the original grantors, or their heirs, and the personal property does not escheat to the State, but that both species of property vest in a receiver or other trustee; and that all the property, real and personal, of the corporation, is to be administered by him for the benefit of creditors and stockholders." [5 Thompson on Corporations, secs. 6745, 6746.]

The doctrine of reverter is also denied in the State of New York. Judge RAPALLO, delivering the opinion of the New York Court of Appeals, said: "In so far as the plaintiff's right to recover in this action is sought to be sustained on the ground that at common law real estate held by a corporation at the time of its dissolution reverts to the grantor, it cannot be supported for two reasons: First, because the plankroad company has not been dissolved; and, secondly, because the rule of law invoked by the plaintiff does not prevail in this State in respect to stock corporations. Under the provisions of 1 R. L. 248, and 1 R. S. 600, sections 9 and 10, upon the dissolution of a corporation, the directors or managers at that time become trustees of its property (unless some other custodian is appointed) for the purpose of paying the debts of the corporation and dividing its property among its stockholders; and these provisions apply as well to the real as to the personal property of corpora-

tions.   Consequently, where lands are conveyed absolutely to a corporation having stockholders, no reversion or possibility of a reverter remains in the grantor.   The conveyances to the plank-road company in this case appear to have been absolute conveyances —no condition or limitation of the estate seems to have been contained in them, and they, therefore, passed the whole estate of the grantor.''   [Heath v. Barmore, 50 N. Y. 302 l. c. 305.]

And 2 Cook on Corporations (6 Ed.), sec. 641, denies the doctrine of reverter in the following language: ''It was formerly believed to be the common law that upon the dissolution of a corporation all its assets belonged to the State, and all its debts were cancelled, and that the creditors were not entitled to anything from the assets.   This remarkable theory has been stated and restated in text-books and decisions of the courts for over one hundred years.   It is found in Blackstone's Commentaries and in the old works of Kyd on Corporations and Grant on Corporations. The courts, however, while upholding the rule theoretically, have quite uniformly refused to apply such a doctrine, and have invented various theories, fictions and arguments for avoiding this supposed doctrine of the common law.   Finally, in 1899, an English court denied that the common law ever countenanced such confiscation, and showed that in the seventeenth and eighteenth centuries many corporations were dissolved, and that in not a single case was any such doctrine applied.   It again may be said that, although the common law has its reproaches, this is not one of them.   The American courts have always refused to follow the supposed common-law rule on this subject.''.

The Supreme Court of Wisconsin said:   ''The claim is made  .  .  .   that under the common-law rule debts due it or owing by it are extinguished, and that its personal property then undisposed of escheats to the State, and its real estate reverts to its gran-

tors or donors. If these propositions are well founded,
the legal consequences are certainly weighty and far-
reaching, and there should be no uncertainty in their
application for the ascertainment of private property
rights, and of those of the State within their opera-
tion.  True, there are cases declaring that the dissolu-
tion of a corporation is followed by such results, but
the trend of modern adjudications on the subject dis-
avows that such were the doctrines of the common law
as regards moneyed or commercial corporations.  The
result of the adjudications seems correctly and well
stated by Chancellor Kent.  He observes: 'The rule
of the common law has in fact become absolete and
odious. It never has been applied to insolvent or dis-
solved moneyed corporations in England. The sound
doctrine now is, as shown by statutes and judicial de-
cisions, that the capital and debts of banking and other
moneyed  corporations constitute a trust fund and
pledge for the payment of creditors and stockholders,
and a court of equity will lay hold of the fund, and see
that it be duly collected and applied.'  [2 Kent, 307,
note.]  The reason usually assigned for rejecting the
old rule and holding it inapplicable is that the rule
had its origin at a time when corporations dealt almost
exclusively with municipal, ecclesiastical, and elee-
mosynary affairs, and when the modern business cor-
poration was unknown, and that the growth of these
moneyed corporations necessitated the application of
principles which would protect the private property in-
terests of persons dealing with them under the changed
conditions.  To this end, the rights and interests in
and to the property of business corporations are, in
their essentials and nature, considered to be like those
pertaining to partnership organizations; and when
such corporation dissolves, and thereby loses legal
capacity to preserve its estate, a court of equity will,
if necessary, lay hold of its assets to compel a final
liquidation of its affairs, and a distribution of the capi-

tal among the stockholders as in partnership associations.'' [Lindemann v. Rusk, 125 Wis. 1. c. 229.]

In a later case, the Supreme Court of Wisconsin adhered to these views: ''We are cited to the supposed ancient rule of the common law that upon the termination of a corporation its real estate reverts to the grantor and its personalty to the sovereign and that its debts become extinguished. Some bearing is claimed for that. While it has some distinguished support in modern times (2 Kent's Commentaries, 307), it long since became obsolete, if it ever was the law, except as regards public corporations. It was distinctly repudiated by this court in Lindemann v. Rusk, 125 Wis. 210. The authorities supporting such repudiation are substantially without conflict. [Citing authorities.] American courts have, except in a very few instances, never recognized the doctrine, and quite recently it was held by the Court of Queen's Bench in Bankruptcy that it never had any place in the common law of England. In In re Higginson and Dean (1899), L. R. 12, B. D. 325, 79 L. T. Rep. 673, WRIGHT, J., said that no instance was recorded in the books where such doctrine was ever applied by any English court, and referred to an American decision, Bank of Vincennes v. State, 1 Blackf. (Ind.) 267, where the contrary was held, as having been reasoned on a false basis. We may safely close this branch of the case by saying that, aside from *dicta* here and there, in the whole not worthy of serious consideration, there is no legitimate support anywhere for the rule that the property of a business corporation upon its termination and the payment of its debts goes otherwise than to its members, if it has members to take. It is quite remarkable that the ancient rule should, for well nigh two centuries, have been confidently asserted from time to time by judges and text-writers as the law, including writers of such eminence as Bacon, Kyd and Kent, have first been repudiated quite unanimously in

America, and then be declared in the supposed place of its origin to never have been a part of the common law. Here, the language of Justice BRADLEY, in Late Corporation (Mormon Church) v. United States, 136 U. S. 1, 17, confining the application of the supposed ancient rule to public corporations, has been universally adopted." [Huber v. Martin, 127 Wis. 1. c. 435.]

The case of Fox v. Horah, 36 N. C. (1 Ired. Eq.) 358, referred to and relied on by counsel for plaintiff, was explicitly overruled by the same court in Wilson v. Leary, 120 N. C. 90, and in doing so the court used this language: "The plaintiffs must recover upon the strength of their own title, and not upon defects, if any, in the title of the defendants. . . When the lodge ceased to exist for want of members, whether its property passed to the grand lodge of I. O. O. F., in this State, of which Oriental Lodge No. 24 was a member, or escheated to the State for the University (Code, sec. 2627) does not concern the plaintiffs and is not before us. The title in fee simple had passed out of the grantor, and, having vested in the Oriental Lodge, upon the extinction of the latter as a corporate entity, its property by no just construction could return to those whose ancestors had conveyed it in fee upon receipt of the purchase money, which he and they have kept and enjoyed. The plaintiffs' counsel insist, however, that at the time of the conveyance the Revised Statutes (Ch. 26, sec. 17), provided that a corporation, unless otherwise specially stated in its charter, had existence for only thirty years, and, as there was no special provision in this charter, the grantor only parted with the property for 30 years, and held a resulting trust. But the conveyance was in fee, and a corporation limited in duration can take a fee simple conveyance just as a natural being, whose existence is also limited. Either may convey away the property, and upon the death of either without having disposed of it the property

will go to pay creditors, to heirs, to stockholders, or as an escheat, according to the circumstances, but in neither case is there any reverter to the grantors. On the death of a corporation the property is usually administered by a receiver, and on the death of a natural person by the personal representative, or passes to the heirs. By the Constitution of North Carolina (article 8, sec. 1) all corporations (if chartered since 1868) are subject to extinction at any time, or their duration can be abridged or extended, at the will of the Legislature. It would now be a startling doctrine that upon the repeal of a charter all real estate, though conveyed to the corporation absolutely in fee simple, reverts, as at common law, to the original grantors, to the total exclusion and loss of creditors and stockholders. On the contrary, such property, when not held on a base or qualified fee, as was the case in State v. Rives, 27 N. C. 297 (though it has been since held that there are no qualified fees in this State—School Com. v. Kesler, 67 N. C. 443) would be administered to pay creditors, the surplus being divided among the stockholders. If there were no stockholders, then the question might arise whether the property had escheated to the State, but certainly the grantors, upon such corporation becoming extinct, would have no greater right to a reversion than would the grantors to any other corporation. . . It is true, it was held in an opinion by Gaston, J., Fox v. Horah, 36 N. C. 358, that by the common law, upon the dissolution of a corporation by the expiration of its charter or otherwise, its real property reverted to the grantor, its personal property escheated to the State and its choses in action became extinct, and, hence, that, on the expiration of the charter of a bank, a court of equity would enjoin the collection of notes made payable to the bank, or its cashier, the debtor being absolved by the dissolution. Judge Thompson (5 Thomp., Corp., sec. 6720) refers to this decision 'in accordance with the barbar-

ous rule of the common law' as 'probably the last case of its kind,' and notes that it has since been, in effect, overruled in Von Glahn v. DeRosset, 81 N. C. 467, and it is now expressly overruled by us. Chancellor Kent (2 Com. 307 note) says, 'This rule of the common law has, in fact, become obsolete and odious,' and elsewhere he stoutly denied that it had ever been the rule of the common law, except as to a restricted class of corporations. [5 Thompson, supra, sec. 6730.] The subject is thoroughly discussed by Gray on Perpetuities, sections 44-51, and he demonstrates that my Lord Coke's doctrine rested on the dictum of a 15th century judge (Mr. Justice Coke, in the Prior of Spalding's case, 7 Edward IV, 1467), and is contrary to the only case deciding the point, Johnson v. Norway, Winch 37 (1622), though Coke's statement has often been referred to as law. But, whatever the extent of this rule at the common law, if it was the rule at all it was not founded upon justice and reason, nor could it be approved by experience, and has been repudiated by modern courts. The modern doctrine is, as held by us, that 'upon a dissolution the title to real property does not revert to the original grantors or their heirs, and the personal property does not escheat to the State.' [5 Thompson, supra, sec. 6746; Owen v. Smith, 31 Barb. 641; Towar v. Hale, 46 Barb. 361.] The crude conceptions of corporations naturally entertained in a feudal and semi-barbarous age, when they were few in number, and insignificant in value and functions, by even so able a man as Sir Edward Coke, and the fanciful reason given by him (Coke Lit. 136) for the reverter of their real estate, to-wit, that a conveyance to them must necessarily be a qualified or base fee, have long since become outworn and discredited. That which is termed 'the common law' is simply the 'right reason of the thing' in matters as to which there is no statutory enactment. When it is misconceived and wrongly declared, the common rule is equally sub-

ject to be overruled, whether it is an ancient or a recent decision. Upon the facts agreed, judgment should be entered below against the plaintiffs, dismissing their action.    Reversed.''

To the same effect is the case of Shayne v. Evening Post Pub. Co., 168 N. Y. 70, and Gray on Perpetuities (2 Ed.), secs. 44-51a.

We, therefore, hold that the so-called common law rule of reverter is not in force in this State, and that even in the absence of said section 976 a reverter to the corporation would not have taken place.

We are, therefore, of the opinion that the finding. and judgment of circuit court as to plaintiff was proper.

II.    This brings us to the question presented by defendant's appeal, namely, that it acquired from the Central Coal & Mining Company the title to this coal by mesne conveyances, and that consequently the trial court erred in not so finding.

This record shows that the only title defendant claims to have to this coal is under a deed, dated August 5, 1884, executed by Forman six years after his discharge as assignee in said bankruptcy proceeding. Clearly he had no authority after the termination of the bankruptcy proceeding and his discharge as assignee to convey the coal which came into his hands as a part of the assets of the bankrupt estate; and the mere fact that he recited in the deed that it was executed to correct a former deed gave it no additional force or effect, especially since that deed in no manner or form refers to or undertakes to convey this coal, but relates to other property not involved in this case.

Counsel for defendant do not seriously controvert that proposition, but seem to insist upon it as an inducement for the court to modify the judgment of the circuit court as to it by striking out of it that part which held that it also had no title to said coal.

In our opinion the trial court did right in finding against the defendant also for the reason that plaintiff's case was based upon section 650, Revised Statutes 1899, and defendant, in its answer, denied plaintiff's title and sets up title thereto in itself. Under said section it was the duty of the court to ascertain and determine the estate, right, title and interest of parties to the suit. In obedience to the plain mandate of that statute, the court heard the evidence and correctly found that neither the plaintiff nor defendant owned the coal, and rendered judgment accordingly. But nothing contained herein is to be taken or construed as adjudicating the title or equities, if any, defendant may have or own in or to this coal, as against all other persons.

We are, therefore, of the opinion that the finding and judgment of the court as to defendant was also correct, and should be affirmed as to both plaintiff and defendant.

All concur, except *Valliant, J.,* absent; *Lamm, P. J.,* in result in separate opinion; *Graves, J.,* also, in separate opinion.

GRAVES, J.—I think upon the record that both plaintiff and defendant failed to make out paper title, or a title by adverse possession, to the coal under this land. But, I am under the further impression that the evidence tends to show that defendant for a time before the institution of this action, but not for ten years, had been in possession of this coal and was mining the same under a claim of right under their deed. In this claim of right there may be some equities between defendant and parties other than plaintiff which could not be properly adjudicated in this cause. However, the issues on trial were between plaintiff and defendant, and the adjudications here would not in any way bind the defendant in any action brought by or

against it in the determination of any rights as between it and other claimants or parties.

So understanding the law, I concur in the result of the opinion by Judge Woodson. *Lamm, P. J.,* also concurs in this and expresses himself further upon other questions.

LAMM, P. J.—I am in doubt whether the judgment should not be modified so as to strike out all finding relating to defendant's title. . Since plaintiff had neither title nor possession of the coal, it is questionable whether under the form of answer here he was entitled to any finding as to defendant's interest or estate. But as this is not a proceeding *in rem* and does not settle the title as to the whole world, defendant is in no legal danger that the judgment will be construed as *res adjudicata* in any controversy between it and others having or claiming an equitable or legal title to the coal.

Therefore, there is no error affecting the merits and I concur with my brother Woodson and my brother Graves that the title is settled as between plaintiff and defendant. Therefore, I concur in the result.